# Clay *against* Irvine.

A husband who administers upon the estate of his deceased wife, is not accountable to her heirs for the same, although he settle an administration account, and the Orphans' Court decree that there is a balance in his hands.

A judgment will be reversed, when it is apparent from the record that the plaintiff had no right to recover.

ERROR to the Common Pleas of *Venango* county.

William Irvine and Mary, his wife, against William Clay, administrator of Agnes Clay, deceased. This was a *scire facias* upon a transcript filed of a balance in the hands of the defendant as administrator of the estate of Agnes Clay, (formerly Agnes Stewart), his deceased wife, as found by auditors; to which the defendant pleaded payment with leave, &c.

The plaintiff gave in evidence the report of auditors, showing a balance of $458.10 upon the administration account of William Clay, administrator of Agnes Clay, deceased. It was admitted that Mary Clay, the wife of the plaintiff, was the daughter of Agnes Clay and the defendant. That Mary married Robert W. Irvine, who died since the report, and was now married to the plaintiff; that Agnes Clay died about the year 1814, leaving two daughters, Mary the wife of the plaintiff and another by the defendant. The defendant then proposed to prove that he was a man of limited means of supporting and educating his children, and unable to do so without the use of the means received from the estate of his former wife, their mother; and that he maintained and educated the wife of plaintiff from the age of three years until she married between seventeen and eighteen years of age. The plaintiff objected to this evidence, and the court sustained the objection, and sealed a bill of exception at the request of the defendant.

[Clay v. Irvine.]

Errors assigned:

1. The court erred in rejecting the evidence.
2. It appears from the record that the plaintiff below was not entitled to recover.

*Galbreath*, for plaintiff in error, argued that a father was entitled to compensation for supporting his own children out of their estate, if it was sufficient for the purpose, and he not of sufficient ability to maintain them. 4 *Mass.* 97; 5 *Rawle* 337; 5 *Whart.* 56; *Reeves' Dom. Rel.* 320. But here it is apparent that the plaintiff had no cause of action, as the husband was entitled to the personal estate of the wife in his own right. 1 *Binn.* 587; 10 *Serg. & Rawle* 55; *Act of* 1797, *sec.* 5.

*Pearson, contra.* The decree of the Orphans' Court was conclusive, both as to the liability of the defendant to the plaintiff, and as to the inadmissibility of the evidence. As to the liability of the defendant to account, that was settled by the decree of the Orphans' Court, which can only be reversed on appeal; and if the defendant was entitled to any allowance, that court alone had power to make it.

The opinion of the Court (Huston, Justice, *dissentiente*) was delivered by

Gibson, C. J.—It seems to have been taken for granted that the property administered by the defendant had been the separate estate of his wife; and that it passed to her children at her death. But the very fact that he administered it, shows that it had become his own. As her separate estate, it could be held only in trust, and the trust account could be settled only by her trustee. If the husband himself were the trustee, he would have had no authority to meddle with the property as her administrator, unless she had left debts to be paid, which is not pretended; for, as administrator, he could collect only choses in action held in her name without the intervention of a trustee; which, being reduced to possession, would become his own against every person but her creditors. It is pretty clear, then, that the money in contest is not the proceeds of personal property settled to the separate use of the wife. Nor can it well be the proceeds of her land converted since her death; for as such it would have been the property of those to whom the title descended, and could not have been brought into the husband's administration account, unless he had sold the land by order of Orphans' Court to pay her debts or maintain her children; and in the latter case there would be no dispute about an allowance. In no other aspect could the balance of the administration account be viewed as the property of the plaintiffs. We have not the account or any document before us to show from what the fund accrued; but there is nothing to show

that it is not the proceeds of her property in action reduced to possession since her death; and it was incumbent on the plaintiffs to show that, in order to make out a title. If, then, the defendant succeeded to the property at the death, how is his right to be affected by the settlement of the administration account? That the property was his own as regards the children, did not exempt him from accountability to creditors. It is for that reason that a husband is required to give bond, like any other administrator, with condition to file an inventory and settle an account. Credit-. ors, therefore, might have cited and attached him had he not voluntarily settled; or sued his bond which would have been forfeited by an omission to settle within the year: and his title cannot be impaired by the voluntary performance of a legal duty. The balance was nevertheless his own, unless there were creditors; and it is not pretended that there was a decree of distribution, as well as confirmation, awarding the money to the children. Such a decree, unappealed from, would doubtless carry it from the father; but fortunately there is none. A transcript of the balance was subsequently filed in the Common Pleas to create a lien for it on the accountant's real estate; but for whose security? Certainly for the security of those who had title; and as none could be entitled against the husband but the wife's creditors, of whom we have heard nothing, the security seems to have been a nullity. The purpose of a transcript is to secure existing rights; not to vest rights in those who had them not; and if the plaintiffs had not title by the decree, they could no more gain it by lodging a transcript with the prothonotary of the Common Pleas than a stranger could do so. It would have been hard beyond measure, had the law suffered the defendant's title to be devested by an act which he had no means to prevent. Had the money really been held in trust for the children, the evidence proposed would have been properly rejected; for maintenance out of the child's estate is to be allowed by the Orphans' Court, and not by the Common Pleas in a collateral proceeding. But as the cause was presented the inquiry was irrelevant; and we reverse the judgment, not for the rejection of the evidence, but for the want of title apparent on the face of the writ.

HUSTON, J., *dissenting*.—The paper-book in this case is very short, though long enough to bring up the only point on which the court below were alleged to have erred, viz., in rejecting evidence to prove that William Clay, the defendant below, was a man of limited means of supporting and educating his children, and unable to do so without using the means received from the estate of his former wife, their mother, and that he maintained and educated the plaintiff, Mary, from the time she was three years old till she was married at the age of about 18. The court rejected this evidence, and this was the only error assigned at first. This

[Clay v. Irvine.]

court affirmed the decision as to that matter. But on the morning of the argument in this court another error was assigned in these words: " It appears from the record that the plaintiff below was not entitled to recover."

To understand this, I must give the rest of what appears in the case. By our Act of Assembly, when the account of an administrator or executor has been passed in the Orphans' Court, a transcript of the decree may be taken to the Court of Common Pleas and filed, and shall be a lien on the estate of the executor or administrator; and any person entitled may proceed thereon by *scire facias* to recover his proportion of the balance. This suit was a *scire facias* on such transcript, and the plaintiff below not only gave in evidence the decree of the Orphans' Court, but showed that it had been contested, referred to auditors, and a report, which was affirmed.

The reason for reversing on the last error assigned is, that under the Act prior to the revised Act the husband was, on administering, entitled to the whole personal estate of his wife, and her children cannot, after her death, sue and recover it from him. There was no dispute about this; but it was said that was a defence before the Orphans' Court, and if there was error in the decree, the remedy was by appeal, at any time within three years, or by Act of 1840 within five years, on petition, alleging specific error or errors. The Orphans' Court alone can settle an administration account, and this as well under former laws as under the Act of 16th of June 1836. That by the Act of 29th of March 1832, the Orphans' Court is a court of record, and it is enacted that its proceedings and decrees in all matters within its jurisdiction, *shall not be reversed or avoided collaterally in any other court,* but they shall be liable to reversal, modification or alteration on appeal to the Supreme Court.

The majority of this court, assuming that the sole and exclusive right of the husband had been forgotten by his counsel (the oldest lawyer in the district, and among the most eminent), and not adverted to by the judges in the several stages of the contest in the Orphans' Court, reversed the judgment on this second error. I would not have done so; among other reasons, because the 29th section of the Act last cited, in the second proviso, expressly declares that although the amount of lien be filed, yet on an appeal the account shall, if it is lessened, be only for the sum ascertained in the Supreme Court; and the prothonotary is commanded, on a certificate from the Supreme Court, to enter that on his docket, and the decree shall be for that amount and no more; and a certificate thereof shall be sent to the prothonotary of the Common Pleas, and the lien be for that amount for five years and no longer, unless revived by *scire facias.*

From the settlement of Pennsylvania the Orphans' Courts and Common Pleas were held before justices of the peace, until the

[Clay v. Irvine.]

constitution of 1790; and the clerks of these courts were seldom lawyers. Once a year the judges of the Supreme Court held a Court of *Nisi Prius* in each county, and the judges of that court were not always lawyers. Before and for some years after 1790, when the proceedings of an Orphans' Court came incidentally before the Common Pleas, " now having the president a lawyer, or before the judges of the Supreme Court at a *Nisi Prius*," they were not treated as the proceedings of a Court of Record. At length the matter excited attention, and by slow degrees, from an unwillingness to overrule the decisions of their predecessors, it was established in *M'Pherson* v. *Cunliffe* that they were conclusive in cases within the jurisdiction of that court. The Act of Assembly of 1819 directed that the settlement of an administration account not appealed from within one year, should be conclusive. In 1832, in the Act I have cited above, three years were allowed for an appeal; and in 1840, five years, in case of a specified error. After the Act of 1819 was passed, the first Act allowing the balance found on settlement against an executor or administrator to be filed in the Common Pleas, and to be a lien on his estate, and even before the Act of 1832, it was decided that on a *scire facias* on such lien filed, the correctness of the decision and decree in the Orphans' Court could not be inquired into. And in *Clark* v. *Callaghan*, (2 *Watts* 259), where the Orphans' Court had ordered distribution and had allotted the sum payable to each heir, in a suit by an heir, it was decided that the administrator could not set-off the proportion of a debt against the decedent, recovered since the settlement and decree of the Orphans' Court, but must go to that court by petition to have the decree opened and corrected. And in *Thompson* v. *M'Gaw*, (2 *Watts* 164), it is said, " that the decrees of the Orphans' Court, unappealed from, in matters within its jurisdiction, are binding and conclusive in every collateral inquiry, as well in relation to administration accounts as other subjects, is now the settled law. The remedy for the party aggrieved is by appeal:" and until this case, so has the law been held since; and this is a case not only within the jurisdiction of the Orphans' Court, but we think its exclusive jurisdiction.

It is quite possible the defendant below, in his character of administrator of his deceased wife, (though it would have been more correct in the character of guardian to her children,) received money from her father's estate, which must go to his and her children, and not to him, as if her father survived Mrs Clay and died intestate, Mrs Clay's share of his personal and real estate would go to his children. It was never hers, and does not go to her husband. So if her father had devised money to her, and survived her, not altering his will, the legacy did not lapse but went to her children and not to her husband. If Mr Clay did not object to the charge against him as administrator, this court has no right to reverse collaterally what he did not appeal from.

[Clay v. Irvine.]

These are not the only supposable cases in which he might be liable. Suppose a devise to his wife until her children came of age and then to them, he would receive this as administrator of his wife, and his right would cease when the right of the children accrued to the possession. Independent of the express Act of Assembly, I object to reversing on supposition. On the other hand the old and best rule is to affirm, if a supposable case in which the judgment would be right. The gentleman concerned for defendant in error had not been of counsel in the Orphans' Court, and could say nothing of the facts there.

Judgment reversed.